**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

––––––––––––––––––––

No. 94-50709

––––––––––––––––––––

JOHN DOE, as Next Friend of
Jane Doe, a Child,

                              Plaintiff-Appellee,

                    versus

HILLSBORO INDEPENDENT SCHOOL
DISTRICT, ET AL,

                              Defendants,

LARRY ZABCIK; JAMES MAASS; TERESA DAVIS;
NORMAN BAKER; RICHARD SEWALL; BILLY SULLINS;
LEON MURDOCH,

                              Defendants-Appellants.

––––––––––––––––––––

Appeals from the United States District Court
for the Western District of Texas, Waco

––––––––––––––––––––

May 27, 1997

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The custodian of the Hillsboro Independent School District raped a 14-year-old eighth grade student in an empty classroom. The student through her parents filed this lawsuit under 42 U.S.C. § 1983 asserting deprivations of constitutional rights and seeking money damages for this assault from the Hillsboro Independent

School District, as well as its trustees and present and past superintendents in their individual capacities. The district court denied motions to dismiss filed by the individual defendants under Rule 12(b)(6). This appeal of the district court's denial of qualified immunity followed.[1] A divided panel of this court affirmed. We took the case en banc and now reverse.

We conclude that no claim was stated under 42 U.S.C. § 1983 against the individual defendants and that their motions to dismiss should have been granted.

I

The motions to dismiss targeted the amended complaint. It read in relevant part:

5. Jane Doe is a minor child who was, at the time of the events described, thirteen (13) years old. 6. Near the end of the 1992-1993 School Year (sometime in May of 1993), Jane Doe was kept after school to do special work on her studies . . . . 7. Jane Doe stayed after school . . . . 8. Jane Doe did her studies for a while, but was asked, by a teacher, to go upstairs in the school building to retrieve some supplies for the teacher. Jane Doe did. 9. When she went upstairs, a black male school district employee, then acting as a custodian, trapped Jane Doe in an empty classroom, and raped her. The school employee also physically assaulted Jane Doe in the course of the rape causing her bodily injury different from the sexual assault. 10. Jane Doe did not tell anyone what had happened to her until the following Christmas holidays — when it became apparent that Jane Doe was pregnant. Jane Doe then told her mother and father what had happened. 11. The rapist was arrested, and pleaded guilty. 12. Jane Doe had a healthy baby boy

---

[1] The individual defendants have also appealed the district court's denial of their motions to dismiss claims under Title IX, 20 U.S.C. §§ 1681-1688. Like the panel, we do not read the amended complaint as attempting to state a Title IX theory against the individual defendants.

in March of 1994 at fourteen (14) years of age . . . . 19. Other members of the maintenance staff have, on information and belief, convictions for murder, armed robbery, cruelty to animals, failure to ID-Fugitive, unlawful weapons possession, multiple DWI, and drug offenses . . . . 21. The Hillsboro Independent School District . . . warned new employees to "stay away from the little girls."

Plaintiffs contend that the individuals sued here are liable under two distinct theories. First, plaintiffs urge that "the amended complaint states a claim for liability based on the custody of Jane Doe, whereby she was owed some minimum degree of protection," matching "the contours of liability" that were outlined in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989). Second, plaintiffs would bring themselves within our decision in Doe v. Taylor Indep. School Dist., 15 F.3d 443 (5th Cir.) (en banc), cert. denied, 115 S. Ct. 70 (1994). As we will explain, these theories offer plaintiffs no comfort.

II

A

In DeShaney v. Winnebago County Dept. of Social Services, the Supreme Court rejected the contention that government owes a constitutional duty to protect people from the misdeeds of other private actors, in the absence of a special relationship. We have not accepted the argument that school compulsory attendance laws create such a special relationship between student and school. In Walton v. Alexander, 44 F.3d 1297 (5th Cir. 1995)(en banc), we refused to find a special relationship between a state school for deaf children and its students who were residents in the school

3

where they slept and took their meals.  It is true that attendance at the school was not required by state law, and we emphasized the absence of this legal compulsion.  It is equally true that poor students may have had no real alternatives.  The year before Walton we held that, whatever the effect of compulsory attendance, it ended when compulsory attendance ended.  Leffall v. Dallas Indep. School Dist., 28 F.3d 521, 529 (5th Cir. 1994)("[E]ven though Steadham may have been compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended.").  See also Johnson v. Dallas Indep. School Dist., 38 F.3d 198 (5th Cir. 1994), cert. denied, 115 S. Ct. 1361 (1995).[2]

We decline to hold that compulsory attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors.  Much has been written about this issue, and we will not pause to rehearse fully the arguments again.  See Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996); Sargi v. Kent City Bd. of Educ., 70 F.3d 907, 911 (6th Cir. 1995); Dorothy J. v. Little Rock School Dist., 7 F.3d 729, 732 (8th Cir. 1993); D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1368-73 (3d Cir.

---

[2]  In Texas, a child must attend each school day, which is defined as at least seven hours.  The child must attend for the time the "program of instruction" is provided.  See Tex. Educ. Code Ann. §§ 25.082 and 25.083.  A child who fails to stay after completion of the program of instruction does not violate compulsory attendee laws.  The application of the statute in this case is not certain.  We are not prepared to say under the pleadings that Jane Doe was not in the school at the time of the assault under compulsion of state attendance laws.

4

1992) (en banc), cert. denied, 113 S. Ct. 1045 (1993); J.O. Alton Community Unit School Dist. 11, 909 F.2d 267, 272 (7th Cir. 1990). We join every circuit court that has considered the issue in holding that compulsory school attendance, in Texas to attend seven hours of programmed education on each school day, does not create the custodial relationship envisioned by DeShaney. The restrictions imposed by attendance laws upon students and their parents are not analogous to the restraints of prisons and mental institutions. The custody is intermittent and the student returns home each day. Parents remain the primary source for the basic needs of their children. Finally, we find helpful the rationale of the Supreme Court's decision in Ingraham to deny school children the protections of the Eighth Amendment:

> The school child has little need for the protection of the Eighth Amendment. Though attendance may not always be voluntary, the public school remains an open institution. Except perhaps when very young, the child is not physically restrained from leaving school during school hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.

Ingraham v. Wright, 430 U.S. 651, 670 (1977). Refusing to create a whole new class of constitutional rights does not leave the student without legal protection. A review of our recent decisions alone makes that clear. There are concerns pointing in a different direction. See Johnson, 38 F.3d 198, 203 n.7 (5th Cir. 1994). To say that compulsory attendance laws restrict the freedom of students and parents in significant ways, however, is not to say

5

that this status of students is sufficiently akin to that of prisoners and persons committed to mental institutions to trigger a constitutionally rooted duty.

B

Nor does a state-created-danger theory save plaintiffs' claims. Its narrow compass is reflected by the reality that we have never sustained liability on this ground. In Johnson we observed that "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." 38 F.3d at 201. See also L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992) (assault of nurse working with known sex offender under directive of state supervisor), cert. denied, 113 S. Ct. 2442 (1993); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989) (woman raped when police impounded car of drunk driver leaving her in high crime area), cert. denied, 498 U.S. 938 (1990); White v. Rochford, 592 F.2d 381 (7th Cir. 1979) (children left by police officers alone in car after arresting driver). Viewed in the light most favorable to the plaintiffs, the school district placed the student in the same area as a school custodian who had no known criminal record, sexual or otherwise, with school teachers in the same building but not in the immediate area. This will not trigger a duty under a state-created-danger theory, even if we were to adopt such a theory. Such post hoc attribution of known danger would turn inside out this limited exception to the principle of no duty.

6

## III

Plaintiffs do not urge that the custodian acted under color of state law. Rather, they assert that the defendants breached a constitutional duty in failing to protect the child from the rape by the janitor. The argument is that the defendants are liable if there was a "pattern of events that would give some warnings"; that Jane Doe's pleadings set forth facts that were known, or "learned" ("'fondling students, voyeurism, and the like'; warnings to the custodians to 'stay away from the little girls'"). The argument continues that "although the predictors do not point to specific prior incidents of sexual abuse of a specific student, they do point plainly toward the dangerous combination of crime, sex and violence." The reliance upon Doe v. Taylor concludes with the assertion that the individual defendants were deliberately indifferent to these risks by not conducting an adequate check of employees' backgrounds.

Unlike Doe v. Taylor, in which a school employee acted under color of state law, this case requires us to locate the primary constitutional wrong in the board and school officials. The Supreme Court has recently indicated that municipal authorities can be liable under § 1983 if a hiring decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Board of the County Commissioners of Bryan County v. Brown, ___ S. Ct. ___, ___, 1997 WL 201995, at *9 (Apr. 28, 1997).

7

The Bryan County Court declined to announce a bright-line rule that municipal officials can never be liable under § 1983 for an isolated hiring decision that neither constitutes nor directs a violation of federal law. See id. at ___, 1997 WL 201995, at *10. But the Court warned that liability in such cases will necessarily be rare: "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequences of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at ___, 1997 WL 201995, at *9. See also City of Canton v. Harris, 489 U.S. 378, 389 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" (citing Monnell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978))); Gonzalez v. Ysleta Indep. School Dist., 996 F.2d 745, 760-62 (5th Cir. 1993) (finding the evidence insufficient to establish deliberate indifference where a school district failed to terminate a teacher with a history of abusing students sexually).

In Bryan County, a police officer used excessive force in extricating a suspect from her vehicle. The plaintiff's claim of deliberate indifference in hiring, then, was coupled with underlying conduct under color of state law. In this case, by contrast, the janitor did not act under color of state law in raping Doe. Under the facts alleged by Doe, there can be no

8

recovery even if the janitor were acting under color of state law. When the district court afforded Doe the opportunity to amend his complaint, he could not even allege that the custodian who assaulted his daughter either had a prior record of violent crime or previously had been reported to the officials for sexual misbehavior towards students. Even in the context of resisting a Rule 12 motion to dismiss, plaintiffs have demonstrated an inability to show a nexus between any failure to check criminal background and this assault.

The duty articulated in Bryan County does not detract from DeShaney's general rule that municipalities have no duty to protect citizens from the private actions of fellow citizens. Recognizing a potential for § 1983 liability based on egregious hiring decisions does not entail endorsement of the view that defendants such as the Hillsboro Independent School District have a duty to protect students from threats from other sorts of third parties.

IV

Plaintiffs have stated no claim against these individuals. The denial of the motions to dismiss is reversed. The case is remanded with instructions to enter judgments for the defendants in their individual capacities and for further proceedings consistent with this opinion.

REVERSED and REMANDED.


EDITH H. JONES, Circuit Judge, with whom SMITH, Circuit Judge, joins, specially concurring:

9

I am pleased to concur in Judge Emilio M. Garza's special concurrence. I also concur in the majority opinion, which, like every other federal circuit, rejects the plaintiff's claim that compulsory school attendance laws give rise to a constitutional special relationship between a student and the school. The special relationship doctrine has been inferred from the Fourteenth Amendment due process clause and currently protects those in involuntary state custody, i.e. prisoners and the mentally ill or retarded, from mistreatment by third parties. Absent intervention by the Supreme Court, no such special relationship protects children in public schools under compulsory attendance laws. Elsewhere I have noted the incongruity and shallow logic underlying the distinction between children in public schools and those who are involuntarily confined full-time. Johnson v. Dallas Independent School Dist., 38 F.3d 198, 203 n.7 (5th Cir. 1994). Nevertheless, I concur in this en banc outcome not because the legal distinction has suddenly become persuasive but because there is no realistic alternative. The Constitution does not compel our intervention, and there is no assurance that creating a whole new class of constitutional protections for public school children would be a successful undertaking. A generation of judicial social engineering in the prisons and state-run institutional care facilities has produced dubious results that counsel judicial humility. Thus, while I remain outraged and saddened that public schools too often fail shockingly to take steps necessary to insure the students' safety, emotion must give way to reason. Reform must

be instituted and guided by our people and their direct representatives, not by court decrees.

ENDRECORD

JACQUES L. WIENER, Jr., Circuit Judge, with whom POLITZ, Chief Judge, and BENAVIDES and DENNIS, Circuit Judges, join, specially concurring.


Despite having written the panel majority opinion which was automatically vacated when we voted to rehear this case en banc, I nevertheless concur in the opposite result reached in the foregoing en banc majority opinion and in virtually all of its pronouncements. More specifically, I concur in the majority opinion's analysis of (1) the doctrine of "special state relationship" in section IIA., (2) the "state-created-danger theory" in section IIB., and (3) the theory of public school supervisors' liability, in section III, for their own "deliberate indifference" to the rights of public school students to be free from violation of their bodily integrity as guaranteed by the Constitution —— as far, that is, as section III's analysis goes. But I am constrained to write this short special concurrence in light of the hiatus I discern in section III's "deliberate indifference" analysis.

The introductory paragraph of section III quotes portions of the plaintiff's amended complaint that list <u>post-hiring</u> occurrences allegedly known or learned —— but disregarded —— by school and school board officials. Inexplicably, though, the majority then implicitly characterizes the plaintiff's reliance on <u>Doe v. Taylor ISD</u> as complaining only of the supervisors' deliberate indifference in not conducting adequate <u>pre-hiring</u> background checks. In like

manner, the remainder of section III discusses and analyses "egregious <u>hiring</u> decisions"[3] and the absence of a legal "duty to protect students from threats of other sorts of third parties," without ever addressing the supervisors' alleged disregard of post-hiring reports.

Although I am in complete agreement with that part of section III which insists that in the public school context the theory of deliberate indifference does not impose on supervisors an affirmative or active "duty to protect," I am puzzled by the majority opinion's failure to mention, much less discuss, the potential liability of public school supervisors for breach of the negative or passive duty not to be deliberately indifferent to post-hiring reports and complaints of misconduct that presages violations of students' constitutional rights of bodily integrity. <u>Doe v. Taylor ISD</u> makes clear that the obligation of public school supervisors not to be deliberately indifferent to such harbingers of harm is not grounded in an active duty to protect while at the same time recognizing the existence of a passive duty not to ignore or disregard such clear predictors of impending constitutional violations. The failure of today's majority opinion to address this aspect of deliberate indifference, choosing instead to discuss only the pre-hiring background check manifestation of deliberate indifference, creates the hiatus to which I refer.

I concede that, like his inability to amend the complaint to allege facts constituting a nexus between alleged pre-hiring

---

[3]   Emphasis added.

13

deficiencies and Miss Doe's rape, the plaintiff also found it impossible to allege facts constituting a sufficient nexus between the rape of his daughter and the school supervisors' purported gross disregard of post-hiring reports and complaints of sexual misconduct by members of the school's custodial staff. The bothersome void in the majority opinion's analysis, though, is its total failure to discuss the facet of supervisory liability for breach of the passive or negative duty not to ignore reports of such misconduct and the potentiality for liability of supervisors whose deliberate indifference can be shown to provide the required nexus with the violation of a student's constitutional right.

This hole in the analysis is easily filled by observing that nothing in the majority opinion stands for the proposition that cognizant public school supervisors enjoy per se immunity from liability for breach of their duty not to be deliberately indifferent — whether in pre-hiring background checks or in post-hiring attention to egregious behavior — when such indifference is shown to have a real nexus with a violation of a student's bodily integrity by a third party. In other words, nothing in today's majority opinion lessens or curtails the ability of the law to conclude that public school supervisors, as state actors, are the actual perpetrators of the violation of a student's constitutional right to bodily integrity when evidence is sufficient to demonstrate that there is a "real nexus" between the violation suffered by the student and such supervisors' deliberate indifference to reports or complaints of abuse. As to this aspect

14

of the instant case, all that our rehearing en banc has demonstrated is that this particular plaintiff found it impossible to allege facts upon which the law could thus deem the Hillsboro school supervisors to be the actual perpetrators of Miss Doe's violation by virtue of their deliberate indifference to her rights, either in hiring the school custodians or in not heeding reports of miscreant behavior, regardless of whether the rapist was or was not acting under color of state law.  With this one gap thus bridged, I concur.


ENDRECORD

15

EMILIO M. GARZA, Circuit Judge, with whom JONES and SMITH, Circuit Judges, join, specially concurring:

I concur in the excellent opinion of Judge Higginbotham. I write separately to clarify that my concurrence should not be construed as an acceptance of the holding of *Doe*, 15 F.3d 443 (5th Cir.) (en banc), *cert. denied*, 513 U.S. 815, 115 S. Ct. 70, 130 L. Ed. 2d 25 (1994), that rape or sexual abuse is a violation of the right to bodily integrity under the Fourteenth Amendment.

As I explained in my dissent to the panel opinion, *Doe*, 81 F.3d 1395, 1408 n.2 (5th Cir. 1996) (Garza, J., dissenting), though I am bound by Fifth Circuit precedent,[4] the Supreme Court has yet to rule on whether the right to bodily integrity includes the right to be free from rape or sexual abuse. *See Planned Parenthood v. Casey*, 505 U.S. 833, 849, 112 S. Ct. 2791, 2806, 127 L. Ed. 2d 352 (1994) (citing cases defining contours of substantive due process right to bodily integrity, including cases involving abortion, contraception, marriage and procreation). *Taylor* troubles me because we failed to heed the Supreme Court's admonition, stated on several occasions, that it "has always been reluctant to expand the concept of substantive due process because the guideposts for

_____

        [4]     Only one other circuit has definitively held that the substantive due process right to bodily integrity includes the right to be free from rape or sexual abuse. *See Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 727 (3d Cir. 1989) ("[A] student's right to bodily integrity, under the Due Process Clause, [encompasses] a student's right to be free from sexual assaults by his or her teachers."), *cert. denied*, 493 U.S. 1044, 110 S. Ct. 840, 107 L. Ed. 2d 835 (1990); *cf. Doe By and Through Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1451 (9th Cir. 1995) (citing *Taylor*, 15 F.3d 443, with approval but as inapplicable to the case before the court).

reasonable decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992); *see also Albright v. Oliver*, 510 U.S. 266, 271-72, 114 S. Ct. 807, 812, 127 L. Ed. 2d 114 (1994) (quoting *Collins*, 503 U.S. at 125, 112 S. Ct. at 1068).

Recently, the Sixth Circuit, sitting *en banc*, commented on our conclusion that the right to bodily integrity includes the right to be free from sexual assault.  The court stated:

> All of these civil decisions, rather than pointing to precedent establishing the right, make assertions such as:  "surely the Constitution protects a schoolchild from physical abuse . . . by a public schoolteacher," *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (en banc); or "the notion that individuals have a fundamental substantive due process right to bodily integrity is beyond debate," *Walton v. Alexander*, 44 F.3d 1297, 1306 (5th Cir. 1995) (Parker, J., concurring). These broad statements are not supported by precedent indicating that a general constitutional right to be free from sexual assault is part of a more abstract general right to "bodily integrity."

*United States v. Lanier*, 73 F.3d 1380, 1388 (6th Cir. 1996) (en banc) (concluding that "sexual assaults may not be prosecuted as violations of a constitutional substantive due process right to bodily integrity" under 18 U.S.C. § 242), *vacated*, __ U.S. __, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997).  Since the Supreme Court held in *Lanier* that the court of appeals applied an incorrect standard in determining whether prior judicial decisions gave fair warning that Lanier's actions violated constitutional rights and remanded the case for application of the proper standard, we will

have to wait for another day for guidance from the Court in this area.