Heather BURNELL, et al., Plaintiffs,

v.

Larry WILLIAMS, et al., Defendants.

No. 1:96–CV–1743.

United States District Court,
N.D. Ohio,
Eastern Division.

March 6, 1998.

James H. Banks, Dublin, OH, for plaintiffs.

Marillyn Fagan Damelio, Cleveland, OH, for defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On June 11, 1997, Defendants Ronald Morvai, Mel Coleman and the Mansfield City Schools Board of Education, filed a motion for summary judgment against Plaintiffs Heather Burnell and her mother and next friend, Valerie Burnell [Doc. 11]. In their motion, defendants say no material fact supports the plaintiffs' claims of violation of her constitutional rights under 42 U.S.C. § 1983, or the related state claims for sexual assault and battery, assault, child endangering, child

abuse, negligent hiring and intentional infliction of emotional distress. For the reasons that follow, the Court grants defendants' motion for summary judgment as to Counts I and II of the complaint. The Court dismisses without prejudice all remaining pendant state claims asserted in Counts III, IV and V of the complaint, as matters to be resolved in state court.

## I

Plaintiffs make claim that the defendants deprived Plaintiff Heather Burnell of constitutionally protected rights under 42 U.S.C. § 1983.[1] Plaintiffs also allege many violations of state law.[2] Plaintiffs seek relief against Defendants Ronald Morvai, individually and in his capacity as the Assistant Superintendent of Mansfield Schools; Mel Coleman, individually and in his capacity as the Superintendent of Mansfield City Schools; and the Mansfield City Schools Board of Education.

Plaintiffs' claims arise from certain incidents of sexual contact between Plaintiff Heather Burnell and Larry Williams, an art teacher and coach at John Simpson Middle School in Mansfield, Ohio. Plaintiffs say that from 1991 to 1992, while Heather Burnell was a seventh-grade student in Williams' art class, the defendants knew of and failed to take action against Williams for "hugging and kissing" his student Heather Burnell.

During the 1990–92 school years, Heather Burnell was a sixth-grade pupil in Williams' art class. During the later 1991–92 school year, Heather Burnell and Williams developed a close relationship that later became physical. Burnell testified that the first incident of touching took place shortly after Christmas vacation, when Williams hugged her and touched her buttocks while walking with her.[3] Burnell testified that Williams

---

1. 42 U.S.C. § 1983, governing civil action for deprivation of rights, provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
   42 U.S.C.A. § 1983.

2. Plaintiffs' cite Ohio Rev.Code § 2907.06, governing sexual imposition, which provides:

   (A) No person shall have sexual contact with another, not the spouse of the offender: cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
   (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
   (2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's

or touching person's conduct is substantially impaired.
   (3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.
   (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.
   (B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.
   (C) Whoever violates this section is guilty of sexual imposition, a misdemeanor of the third degree.
   29 Ohio Rev.Code § 2907.06 (Anderson 1996).

3. Q: Tell me what went on between you and he the first half of seventh grade.
   A: The first half of seventh grade, me and him just talked about if I had a problem or whatever, I would go to him. I would talk to him about my boyfriends, about sex. He would talk to me about his wife, his kids, if he was having any problems that—just most—just mostly about what was going on in our lives.
   Burnell transcript at 23–24.
   Heather Burnell testified that the first incident involving touching took place after Christmas vacation. When "he had hugged me, but when he had hugged me, I noticed that he had hugged me like really tight and then as he was walking me upstairs, he had put his hand on my butt." She did not tell him not to hug her. She hugged him back. She never told her mother or anyone

kissed her for the first time on January 22, 1992. Plaintiff claims that Williams kissed her at least three times a week for the remainder of the school year.[4]

Plaintiff Burnell further testified that she never told anyone about the incidents or the relationship with Williams until sometime in May of 1992, when she confided in a friend, Jenny Atwell.[5] That same month, Plaintiff Valerie Burnell learned of her daughters relationship with Williams when she discovered a diary kept by Heather. Upon learning of the events with Williams, Plaintiff Valerie Burnell confronted Williams about his conduct and told him to avoid her daughter. She did not report the confrontation to school officials at this time.

In late August 1992, Plaintiff Valerie Burnell informed school principal Doug Castle that Williams had touched and kissed her daughter. She stated in a note to Principal Castle that she had known about the kissing since May of 1992, but thought she had handled it by herself by confronting Larry Williams.[6]

Following an investigation by Principal Castle and Superintendent Mel Coleman, they relieved Williams of teaching responsibilities on September 4, 1992. Shortly after that, Williams resigned.

At the beginning of the 1992–93 school year, Plaintiff Heather Burnell did not attend the first three days of school. Although she did attend for several days after that, Heather again stopped attending school, claiming she was subject to ridicule and harassment from students and teachers.[7] Despite assurances by school officials of non-disclosure, Heather Burnell continues to not attend

school. The school district privately tutors her at district expense.

## II

Defendants say they are entitled to summary judgment for the reasons that (1) the actions of Ronald Morvai, Mel Coleman and the Mansfield City Schools Board of Education do not constitute a violation of any federally protected right belonging to Plaintiffs; (2) the actions of Larry Williams as it relates to Plaintiff Heather Burnell were not within the course and scope of his employment as a teacher and coach employed by Mansfield City Schools Board of Education; (3) defendants were not negligent in their hiring or supervision of Williams; (4) the individual defendants are immune from personal liability because neither violated a clear Constitutional right; and (5) the individually named defendants acting in their official capacities and the School Board are absolutely immune concerning non-policy issues.

## III

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides in part that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Ad-*

---

at school that Williams was hugging her. Burnell transcript at 47–49.

**4.** Heather Burnell testified that she never had sex with or was naked with Williams, and that the contact between them was limited to hugging and kissing.

**5.** Plaintiff Burnell told Atwell that she and Williams had become very close. "As far as I looked—I looked up to him as my dad." She stated: "It's because I wanted the warmth of a dad." Heather further testified that she never told any adults about what had been going on. Burnell transcript at 58–61.

**6.** In their memorandum, defendants suggest that plaintiffs waited to tell school officials of the incidents, despite having earlier opportunities to inform school principal, Doug Castle, the day Valerie Burnell confronted Williams in May of 1992.

**7.** Plaintiff admits that she did not speak with school officials directly concerning the events involving Williams. However, she did speak with Principal Castle and Superintendent Coleman regarding failure to attend school. Principal Castle has testified that he tried to keep in constant contact with Heather Burnell regarding the fact that she was refusing to come to school.

*ickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The Sixth Circuit has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street*, 886 F.2d at 1479 (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street*, 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. Courts have stated that:

> Under *Liberty Lobby* and *Celotex*, a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict, and if the opposing party is therefore unable to demonstrate that he can do so, summary judgment is appropriate. "In other words, the movant could challenge the opposing party to 'put up or shut up,' on a critical issue [and] ... if the respondent did not 'put up,' summary judgment was proper."

*Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992) (quoting *Street*, 886 F.2d at 1478).

■ The Sixth Circuit Court of Appeals further emphasized the showing required to defeat summary judgment, in *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992). There, the Court stated:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict ...." The "mere possibility" of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted.

*Id.* at 581–81 (citations omitted). Thus, a judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question.[8] Ac-

---

8. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and

cordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* supra 477 U.S. at 251–52.

## IV

Defendants first argue that the actions of Defendants Ronald Morvai, Mel Coleman and the Mansfield City Schools Board of Education are not a violation of any federally protected right belonging to the plaintiffs. In this regard, defendant first say that the individual defendants did not individually violate a federally protected right. Alternatively, Defendants Morvai and Coleman say they enjoy qualified immunity.

■ In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that Congress intended § 1983 to apply to local government entities and to persons. The Court, however, also held that local governments cannot be held liable under § 1983 on a *respondeat superior* theory. Supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983. *Id.* 436 U.S. at 691–94.

■ A situation nearly identical to the instant case was presented in *Doe v. Claiborne County, Tenn.,* 103 F.3d 495 (6th Cir.1996). There, the plaintiff made claim against a school, a school superintendent, and a school board for damages resulting from sex abuse suffered at the hands of a teacher. The Sixth Circuit held that the school board and superintendent were not vicariously liable. The Court went on to explain that a plaintiff must show individual culpability, either through action or inaction. That is, the plaintiff must show acquiescence in a strong "custom" that allowed the sexual abuse. The Court stated:

> Doe cannot base her claim against the County and the School Board solely on

Davis's conduct, for *respondeat superior* is not available as a theory of recovery under section 1983. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, she must show that the School Board *itself* is the wrongdoer. *Collins v. City of Harker Heights, Texas,* 503 U.S. at 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Under *Monell,* the County and the School Board cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell,* 436 U.S. at 690–91. Doe does not assert that her sexual abuse resulted from an officially enacted policy. Rather, she claims that section 1983 liability exists due to a "custom," which, although not officially adopted or established through the decision-making channels, led to Davis sexually abusing her. See *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (parallel citations omitted).

A "custom" for purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell,* 436 U.S. at 691 (internal quotation marks and citation omitted); see also *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.), *cert. denied,* 510 U.S. 826, 114 S.Ct. 90, 126 L.Ed.2d 57 (1993). In turn, the notion of "law" must include "[d]eeply embedded traditional ways of carrying out state policy." *Nashville, C & St L Ry v. Browning,* 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano,* 988 F.2d at 655 (parallel citations omitted).

*Claiborne,* 103 F.3d at 507.

■ Besides showing such a "custom," the Sixth Circuit says a plaintiff must also show

---

determine the truth of the matter but to determine whether there is a genuine issue for trial."

*60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249).

a direct causal link between the custom and the constitutional deprivation; that is, she must "'show that the particular injury was incurred because of the execution of that policy.'" *Claiborne*, 103 F.3d at 508 (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

Plaintiffs Burnell does not claim that the individuals or the School Board had a custom of affirmatively condoning sexual abuse. Clearly, none exists. Instead, Burnell claims that defendants failed to act to prevent the sexual abuse.

■ To state a claim under an "inaction" theory, Burnell must establish: (1) the existence of a clear and persistent pattern of sexual abuse by school employees; (2) notice or constructive notice of the School Board; (3) the School Board's tacit approval of the unconstitutional conduct, such that a court can say that their deliberate indifference amounted to an official policy of inaction; and (4) that the School Board's custom was the "moving force" or direct causal link in the constitutional deprivation. *Claiborne*, 103 F.3d at 508 (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Thelma D. v. Board of Educ. of City of St. Louis*, 934 F.2d 929, 932–33 (8th Cir.1991)).

In another case similar to that here, *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443 (5th Cir.1994), an en banc panel of the Fifth Circuit reviewed a claim made by a student against supervisory school officials relating to sexual abuse of the student by a teacher. The Court held that courts could only hold supervisors liable upon a showing of "deliberate indifference" that was the "closely related" cause of the violation of the plaintiff's federally protected rights. *Id.* at 453 (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ Applying the stricter *Canton* standard, the *Taylor* Court found:

A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that: (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student.

*Id.* 15 F.3d at 454. See also, *Doe v. Hillsboro Independent School Dist.*, 113 F.3d 1412 (5th Cir.1997) (finding that parents failed to state a § 1983 cause of action against school district and school officials arising out of custodian's assault and rape of a student. Parents failed to show a nexus between the assault and the failure to check the criminal background of the custodian).

■ In the instant case, Plaintiffs Burnell give no evidence to show deliberate indifference by defendants for the need to take action "that was obviously necessary to prevent or stop the abuse." Instead, Burnell gives evidence that Laura Evilsizor, the athletic director for Malabar Senior High School in 1986 and 1987, once reprimanded teacher Williams for excessive fraternization with the female students, for presence in the women's locker room during dressing, and for the presence of several young women in his hotel room during early morning hours while at the State track meet. Plaintiffs Burnell show no knowledge of this or other connection to Defendants Morvai, Coleman or the Board.

Plaintiffs Burnell also give evidence from Billie Chester, a social worker with Richland County Children's Services. However, Chester's statements provide no evidence of personal knowledge as to inaction by these defendants.[9] Despite showing no personal

---

9. Fed.R.Civ.P. 56(e) says, in part:
    (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowl-

edge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

knowledge, Chester relates that Principal Doug Castle reprimanded Williams for improper behavior with female students.[10] Again, there is no connection to specific wrongdoing by these defendants.

Plaintiffs Burnell give no evidence that Defendants Morvai or Coleman "learned of facts or a pattern of inappropriate sexual behavior by [Williams] ... pointing plainly toward the conclusion that the subordinate was sexually abusing the student." Nor do Plaintiffs Burnell show "deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse." *Taylor*, 15 F.3d at 454.

## V

■ Alternatively, Defendants Morvai and Coleman say they enjoy qualified immunity. Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a claim to qualified immunity arises through a motion for summary judgment, "we must first decide whether the plaintiff has stated a section 1983 claim against the individual defendants before addressing the qualified immunity question.... If [plaintiff] has stated a claim, then we must examine whether summary judgment is warranted on the grounds of qualified immunity." *Black v. Parke*, 4 F.3d 442, 445–46 (6th Cir.1993); *Carlson v. Conklin*, 813 F.2d 769, 771 (6th Cir.1987).

■ Deciding whether an official may nevertheless be held personally liable for an allegedly unlawful action involves looking into the "objective legal reasonableness" of the action. *Harlow*, 457 U.S. at 819. If the constitutional right "the government official allegedly violated was clearly established at the time of the challenged conduct, 'the im-

munity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.'" *Thomas v. Whalen*, 51 F.3d 1285, at 1289 (6th Cir.1995). When determining whether a right is "clearly established," we "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991), *cert. denied*, 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Supreme Court explained, however, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted).

Here, the individual defendants say they are entitled to judgment because plaintiffs fail to show evidence that these defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known.

Plaintiffs say that the defendants herein are not entitled to qualified immunity because these defendants "approved of or had notice of the continuing sexual contact between Heather Burnell and Williams and showed deliberate indifference to same." Plaintiffs' memorandum at 11–12.

■ To show that these defendants are liable for violations of Burnell's rights, Plaintiffs Burnell need to show that the individual defendants violated a clear constitutional right while acting officially. Plaintiffs contend that Plaintiff Heather Burnell has a constitutional right secured under 42 U.S.C. § 1983, to be "safe at school from advances and/or sexual contact by teachers." Under binding Sixth Circuit precedent, "a school-

10. Chester says Principal Castle suggested restrictions on Mr. Williams, including he not being present in his classroom with students except during class; that he place no hands on students; that he report any intervention needed by a student to a counselor; that he maintain a positive role model; and that he avoid situations permitting him to be alone with female students.

child's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school." *Claiborne*, 103 F.3d at 506.

Nevertheless, the plaintiffs must still show that Defendants Morvai and Coleman violated Plaintiff Burnell's rights. Here, the Court finds no evidence that Morvai and Coleman had knowledge of Williams's conduct or acquiesced in such conduct. Burnell had a clear constitutional right to be free from sexual abuse at the hands of a public teacher. However, neither Morvai nor Coleman violated this right.

### VI

■■■■ The law is clear that local governmental entities can be sued directly under 42 U.S.C. § 1983 for "monetary, declaratory, or injunctive relief where ... the action alleged to be unconstitutional *implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.*" *Monell*, 436 U.S. at 690 (emphasis added). Furthermore, "local governments, like other "persons" under § 1983, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690–91.

■■■■ Plaintiffs fail to show that Defendant Mansfield City Schools adopted a policy that permitted teachers to engage in improper relationships with students. The evidence Burnell gives does not show that the School District, had a "custom" that reflected a deliberate, intentional indifference to the sexual abuse of its students. The failure to probe the nonspecific allegations earlier lodged against Williams does not show deliberate indifference to Burnell's rights. Plaintiffs Burnell do not show that the district's failure to act in Williams's case was the direct result of a custom.

■■■■ Burnell gives scant evidence that the school district "knew of" and acted in such a manner that condoned the behavior of Williams. This evidence is insufficient to show that the Board knew of or, alternatively, failed to take action against Williams.

Plaintiffs also say these defendants ignored and failed to timely respond to plaintiffs' complaint once they revealed the matter. Upon review of the record, the Court concludes no material evidence supports this argument. As related, Valerie Burnell first told principal Castle of the improper conduct in late August 1992. The school board relieved Williams of teaching responsibility on September 4, 1992. No evidence shows that the school board or other defendants failed to timely respond.

Further, unrefuted evidence shows the school district had adopted clear mandates governing the appropriate conduct of its employees.[11] Little evidence shows the school board could not have known, before his hiring, that Williams had propensities toward sexual misconduct.

Plaintiffs Burnell fail to show evidence that the defendants acquiesced in, or ratified Williams's conduct.

■■■■ In order for the plaintiffs to succeed in holding the Board or individual defendants liable, the plaintiffs must prove that Williams acted under the implied or express authority of the Board. Because plaintiffs fail to make such a showing, plaintiffs' claims under 42 U.S.C. § 1983 fail. In *Monell*, the Supreme Court determined that "Congress did not intend municipalities to be held liable unless action pursuant to *official municipal policy of some nature* caused a constitutional tort." *Monell*, 436 U.S. at 691 (emphasis added). The Court further stated that "[i]n particular, we conclude that a municipality cannot

---

11. See defendants' Exhibit D, attached by reference to defendants' motion for summary judgment submitted in case 5:94–CV–891. Defendants Exhibit D provides excerpts from the Mansfield City School policy manual that pro-

vides guidelines on prohibited conduct related to drug use or distribution and identifies objectives for fostering positive student-staff-faculty relationships.

be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* Here, plaintiffs fail to show that Defendants Morvai, Coleman and the Board adopted such a policy. Plaintiffs further fail to show that these defendants acted in a manner such to violate or fail to protect Plaintiff Heather Burnell's civil rights.

For the reasons stated above, the Court grants defendants motion for summary judgment as to Counts I and II concerning plaintiffs' claims for liability under 42 U.S.C. § 1983. Having determined the merits of plaintiffs' federal claims, the Court dismisses Counts III, IV and V, without prejudice so that the plaintiffs may pursue resolution of these unresolved claims in the state courts.[12]

IT IS SO ORDERED.

12. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The doctrine of "pendent" jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two arising out of the same event or connected series of events. Under pendent jurisdiction, the federal claim acts as the equivalent of a jurisdictional crutch. In the constitutional sense, the relatedness of the two claims makes both of them part of the same constitutional "case". Because pendent jurisdiction is principally associated with the federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a "pendent" state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C.A. § 1367.