**Terri Lynn GWEN, Plaintiff–Appellant,**

v.

**REGIONAL TRANSIT AUTHORITY; Earl McKinney, in his official and individual capacity, Defendants–Appellees.**

No. 99–3748.

United States Court of Appeals,
Sixth Circuit.

March 27, 2001.

Before COLE and GILMAN, Circuit Judges; BORMAN, District Judge.*

COLE, Circuit Judge.

Plaintiff–Appellant Terri Lynn Gwen appeals the district court's grant of summary judgment in favor of Defendants–Appellees the Greater Cleveland Regional Transit Authority ("RTA") and co-worker Earl McKinney. Gwen filed suit alleging that she was subjected to a hostile work environment and retaliation in violation of 42 U.S.C. § 2000e ("Title VII") and Ohio Rev. Code § 4112; denial of equal protection in violation of 42 U.S.C. § 1983; and state law claims of infliction of emotional distress, assault and battery, and defamation. The district court granted Defendants' motions for summary judgment on grounds that Gwen could establish neither hostile environment sexual harassment nor retaliation in violation of Title VII.[1] Having determined that Gwen's federal claims were without merit, the district court declined to exercise supplemental jurisdiction over Gwen's state law claims, dismissing those claims without prejudice. For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

Gwen and McKinney were both RTA bus drivers working out of the same garage. They became co-workers in 1989 and had no reporting or supervisory relationship. On July 10, 1996, McKinney, who was off duty at the time, drove up beside the bus Gwen was operating while she was stopped at a bus stop. He honked his horn, and when Gwen looked down at him, he exposed himself to her. Gwen continued on her bus route. At the end of the line, McKinney boarded the bus, again exposed himself to her, and approached her while making "rude and inappropriate comments." On July 15, 1996, Gwen's next scheduled day of work, she filed a formal complaint with her supervisor, Berry Grant, who gave Gwen the day off work, investigated the incident, and suspended McKinney for thirty days without pay.[2] Gwen had never complained about McKinney before this incident, nor has she complained about him or anyone else since. Furthermore, Gwen never complained that the RTA's handling of the incident (i.e., suspending McKinney for thirty days without pay) was inadequate.

Gwen did not return to work following the July 10, 1996, incident. Instead, on August 28, 1996, she contacted an RTA claims examiner who told her that she might be eligible for short-term disability benefits. Gwen filed a claim for, and received, such benefits based on a psychological disability brought on by her encounter with McKinney. Under the terms of the applicable insurance policy and collective bargaining agreement ("CBA"), these benefits were allowed for six months following the date she left work. Approximately two weeks prior to the termination of Gwen's benefits, she received a letter from the RTA stating:

---

* The Honorable Paul D. Borman, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The district court also determined that Gwen's equal protection claim was without merit, and Gwen does not appeal that ruling. In addition, both parties submitted to the district court procedural motions directed at striking evidence from the record. The district court denied those motions, and the parties do not appeal that denial.

2. On the morning of July 15, 1996, Gwen's husband met with Grant to complain about McKinney's behavior. Grant allegedly told Gwen's husband, "Sounds like something Earl [McKinney] would do."

Our records show that on 01/15/97 you will have been absent for a period of six (6) months, from your full duty work since your last day worked.

As such, you are expected to return to full duty on or before 01/15/97. If you fail to do so, your employment will be terminated effective 01/15/97. You have the right and the opportunity to provide additional medical evidence prior to that date regarding return to work information, or the need for reasonable accommodations [sic].

If you choose, you may contact my office to schedule a pre-termination hearing to be held prior to 01/15/97.

As of January 15, 1997, Gwen had not yet contacted the RTA, nor had she provided "additional medical evidence" as described above. Instead, Gwen's treating psychologist, David Coleman, sent a letter to the RTA dated January 15, 1997, which stated:

I am writing to you on behalf of Mrs. Gwen who has been under my care for emotional trauma as the result of an alleged sexual assault by an RTA employee while she was on the job. My initial assessment and diagnosis were contained in a letter written to Marcy Utlak, Claims Analyst of the Medical Life Insurance Company, and I have enclosed a copy for your review.

Although Mrs. Gwen has made good progress since our first contact, her emotional state, in combination with the nature of the allegations, precludes her from working in an environment that allows for contact with the individuals associated with her trauma. Mrs. Gwen is ready and willing to return to work if she can be transferred to another work setting or location that effectively eliminates the possibility of such contact. It is my hope that the RTA organization can accommodate Mrs. Gwen's needs for allowing her to continue as a productive employee.

The RTA received this letter on January 22, 1997, and on January 27, 1997, sent Gwen a letter stating:

Our records indicate that you did not report to work as required, no[r] was additional medical information received from your physician. Therefore, your employment is terminated effective 01/15/97 in accordance with the Authority's Absence Control Policy....

The labor agreement provides you with [a] re-employment right for one year from your date of injury, which was 07/15/96. Therefore, you will remain on our re-employment eligibility list until you notify us of your ability to return to work and you are reinstated, or 07/15/97, whichever comes first.

The RTA later realized that it had in fact received Coleman's letter, albeit after Gwen's termination date.

On July 11, 1997, the RTA's Director of Health and Safety, Dennis Rehfuss, sent a letter to Human Resources indicating that the RTA had terminated Gwen for failing to return to work by January 15, 1997, or to request a pre-termination hearing within that time. The letter also stated:

[Gwen] has one year reinstatement rights extending to 7/15/97. As of this date, she has not contacted RTA, and remains off work....

.    .    .    .    .

An offer to consider transferring her to another bus garage to facilitate her return to work, as requested by her psychologist, was not made due to a poor work record. This decision was made on March 24, 1997, by Irene Shapiro and Art Martin.

Gwen filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Op-

portunity Commission ("EEOC") on January 7, 1997. In her charge of discrimination, Gwen did not check the "continuing violation" box but alleged that the discrimination took place from "12/88 and continuing to 8–1–96." Although the crux of Gwen's charge of discrimination pertained to the July 10, 1996, incident involving McKinney, Gwen also alleged that "[b]efore this incident, it was general knowledge that Earl would grab me and propositioned me and that I was not interested in his advances. Further, other employees and supervisors have done similar things."

On July 10, 1997, before receiving her right-to-sue letter, Gwen filed a complaint in the United States District Court for the Northern District of Ohio. On October 3, 1997, Gwen received her right-to-sue letter, and on February 23, 1998, she filed an amended complaint. Gwen's amended complaint alleges no harassment other than the July 10, 1996, incident involving McKinney: it alleges no harassment by other co-workers, nor does it allege harassment by McKinney occurring at any other time.

Granting Defendants' motions for summary judgment, the district court determined, *inter alia*, that: (1) Gwen failed to establish a prima facie case of unlawful sexual harassment because (a) the July 10, 1996, incident did not create a hostile work environment within the meaning of Title VII, and (b) even if it had, the RTA took prompt remedial action sufficient to avoid liability; and (2) Gwen could not establish unlawful retaliation because she failed to show a causal connection between her protected activity and an adverse employment action, and the RTA presented legitimate, non-discriminatory reasons for its decisions. Gwen's appeal is limited to her claims of hostile environment sexual harassment and retaliation.

## DISCUSSION

### I.  Standard of Review

■  We review a district court's decision to grant a motion for summary judgment de novo. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate when there exists "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

### II.  Title VII

■  Title VII creates a cause of action for gender discrimination by making it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Gwen bases her claims of unlawful discrimination on both hostile environment sexual harassment and retaliation.[3]

---

3.  Although Gwen appeals the grant of summary judgment in favor of both the RTA and McKinney, her brief does not address McKinney's individual liability. In any event, the district court properly dismissed Gwen's Title VII claims against McKinney in light of the fact that a non-employer individual cannot be held personally liable under Title VII. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.").

## A. Hostile Environment Sexual Harassment

■ It is well settled that in order to establish a hostile work environment claim against an employer based on the actions of a co-worker, the plaintiff must show: (1) membership in a protected class; (2) subjection to unwanted harassment; (3) that the harassment was based on protected-class membership; (4) that it unreasonably interfered with the plaintiff's work performance, creating a hostile work environment; and (5) that the defendant knew or should have known of the harassment but failed to implement prompt and appropriate corrective action. *See Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997) (citing *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 50 (6th Cir.1996)); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 619–20 (6th Cir.1986). Here, the district court determined that Gwen could not establish hostile environment sexual harassment because she could not establish the fourth and fifth prongs of the test.

■ Under the fourth prong, the plaintiff must establish that "the charged sexual harassment had the effect of unreasonably interfering with [the plaintiff's] work performance and creating an intimidating, hostile, or offensive working environment...." *Rabidue,* 805 F.3d at 619–20. In *Fleenor,* where the harassment at issue continued for a period of over two weeks, we affirmed the district court's finding of no hostile environment where the co-worker "exposed his genitals to plaintiff, threatened to force plaintiff to engage in oral sex with him, and 'stuck a ruler up Plaintiff's buttocks' against plaintiff's will...." *Fleenor,* 81 F.3d at 49.

The co-worker harassment in *Fleenor* was both more severe and more pervasive than that at issue here. Accordingly, the district court held that McKinney's actions on July 10, 1996, did not create a hostile work environment as a matter of law. Gwen asserts on appeal that the district court improperly limited its analysis to the July 10, 1996, incident because McKinney had been harassing her for some time. Gwen describes herself as being pursued by McKinney and claims that although she never reported these alleged "other incidents of harassment," it so permeated the workplace that the RTA should have known about it. She offers no evidence to support a finding that the RTA knew or should have known of the harassment but for the lone statement of Grant to Gwen's husband, "Sounds like something Earl would do." Furthermore, allegations of other incidents of harassment are neither contained in Gwen's amended complaint nor supported by the record evidence; rather, they show up for the first time in Gwen's opposition to Defendants' motions for summary judgment. Thus, the district court properly declined to consider these other incidents of harassment, holding that Gwen presented insufficient evidence of other harassment. *See Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."); *see also Cline v. Rogers,* 87 F.3d 176, 184 (6th Cir.1996) ("[I]t is not proper to assume the plaintiff could prove facts he had not alleged ....") (internal quotation marks, citation, and alterations omitted).[4]

■ Even if Gwen could satisfy the fourth prong of the relevant test by showing that McKinney's behavior created a

---

4. It bears noting that Gwen's allegations of harassment also create questions of timeliness.

hostile work environment within the meaning of Title VII, she could not establish the fifth prong because the RTA took prompt remedial action in response to Gwen's complaint. Upon receiving Gwen's complaint with respect to the July 10, 1996, incident, the RTA immediately investigated the charges and suspended McKinney for thirty days without pay. Gwen asserts that the RTA's response was inappropriate, that the RTA had a duty to transfer Gwen to another location, and that its failure to do so displayed an attitude of permissiveness amounting to discrimination. Gwen also asserts that the RTA failed to respond at all to the alleged "other incidents" of McKinney's harassment, which the RTA should have known about due to their pervasiveness. In *Fleenor*, we addressed the fifth prong of the test for employer liability based on co-worker harassment, finding:

> [T]he sexual conduct at issue occurred during a two week period in August of 1992. The company reprimanded defendant Harmaker in September of 1992, and, by plaintiff's own admission, the sexual conduct stopped. Even if the conduct up to that time could support a claim under Title VII, the company's action was sufficient to stop it and to relieve itself of liability.

*Fleenor*, 81 F.3d at 50–51. *Blankenship* clarified the standard for determining whether an employer faced with a charge of co-worker harassment took appropriate remedial action so as to avoid liability:

> Once an employer is aware of and responds to charges of sexual harassment, though, mere negligence as to the content of the response cannot be enough to make the employer liable. When an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination. In sum, although negligence as to the existence of harassment may be enough ... for an employer to incur liability for discrimination, negligence in the fashioning of a remedy is not. When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination.

*Blankenship*, 123 F.3d at 873.

Thus, the question we are faced with is not whether the RTA responded to Gwen's complaint in a manner Gwen found satisfactory, but rather, whether the RTA failed to act in good faith by fashioning a remedy so inadequate and inappropriate that it displayed an attitude of permissiveness amounting to discrimination. Although transferring Gwen as requested certainly would have been a reasonable response to her complaint, there simply is no evidence that the RTA failed to act in good faith or that it was so indifferent to Gwen's concerns that it essentially permitted the harassment to continue. Indeed, there is no evidence of further harassment. Gwen never returned to work, nor did she complain about the RTA's response until after her termination date had passed, more than six months following the incident. Furthermore, Gwen fails to point to record evidence sufficient to support a finding that the RTA was aware of, or should have been aware of, any other incidents of McKinney's alleged harassment of Gwen.

Under the circumstances, Gwen simply cannot adduce evidence showing that the RTA's response to Gwen's complaint, in and of itself, displayed such indifference and permissiveness so as to constitute discrimination. Therefore, we hold that the district court properly granted summary judgment on Gwen's claim of hostile environment sexual harassment.

## B. Retaliation

■ In order to prove a claim of retaliation, the plaintiff must prove that:

(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792–93 (6th Cir.2000) (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990)). Once the plaintiff establishes a prima facie case of retaliation, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *See id.* at 792–93 (quoting *McDonnell Douglas,* 411 U.S. at 802). The plaintiff then must demonstrate "that the proffered reason was not the true reason for the employment decision." *See id.* at 793 (quoting *Burdine,* 450 U.S. at 256). The plaintiff bears the burden of persuasion throughout the entire process. *See id.*

█ Here, the RTA presented evidence showing that it terminated Gwen not for filing a charge of discrimination, but for failing to report to work or to request a pre-termination hearing by the January 15, 1997, deadline as was required under the terms of the CBA. Not only does this evidence undermine Gwen's ability to show a causal connection between her protected activity and the adverse employment action (*i.e.,* her termination), it also shows that the RTA had a legitimate, non-discriminatory reason for its decision to terminate Gwen. Gwen offers no evidence of pretext to rebut the RTA's asserted reason. Thus, we hold that the district court properly determined that Gwen failed to establish a prima facie case of retaliation.

CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.

