Manuela LAGUNOVICH, Plaintiff

v.

**FINDLAY CITY SCHOOL SYSTEM, Defendant**

No. 3:00 CV 7660.

United States District Court, N.D. Ohio, Western Division.

Nov. 9, 2001.

Thomas A Sobecki, Toledo, OH, for Plaintiff.

David K. Smith, Britton McGown Smith Peters & Kalail, Matthew J. Markling, Britton McGown Smith Peters & Kalail, Scott C. Peters, Britton McGown Smith Peters & Kalail, Cleveland, OH, for Defendant.

## ORDER

CARR, District Judge.

Plaintiff Manuela Lagunovich brings this action against Defendant Findlay City School System claiming she was discriminated against on the basis of national origin. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pending is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the following reasons, defendant's motion shall be denied in part and granted in part.

## BACKGROUND

Plaintiff was born in Mexico and moved to the United States in 1969. Plaintiff has worked for defendant since 1981 as a custodian in one of defendant's public schools.

Plaintiff filed a charge of discrimination with the United States Equal Opportunity Commission and the Ohio Civil Rights Commission on June 7, 2000. On August 30, 2000, the United States Department of Justice issued a Notice of Right to Sue to plaintiff.

Plaintiff alleges that she was treated differently based on her national origin, in that she was: 1) given more difficult work assignments because of her national origin; 2) not allowed to direct the work of less senior custodians, unlike custodians who worked for less time than she; and 3) not given assistance under circumstances when other custodians had assistance.

Plaintiff alleges, moreover, that she has been subjected to national origin based harassment on almost a daily basis. Other custodians called plaintiff "fucking bitch," "Mexican bitch," and "mother fucker." One employee, Ruth VanAtta, told plaintiff that she was treated differently because she is Mexican and that VanAtta and other workers hated Mexicans. Another employee, Jim Ferguson, crudely discussed his penis in front of plaintiff, opened his zipper, and stated he would show it to plaintiff. In 1996, another custodian made a derogatory joke about Mexicans in front of plaintiff and her supervisor, Arlo Miles.

Plaintiff alleges that Miles laughed at the joke. Plaintiff's cleaning equipment was stolen from her cart.

One custodian, Kathy Bowser, placed vomit in a trash can emptied by plaintiff instead of properly disposing of it. Custodians removed the paper towels from dispensers after plaintiff filled them. When a student vomited in a classroom during the day, three custodians who had responsibility for the classroom neglected to clean it and left the room for plaintiff to clean at the end of the day.

During a mandatory in-service day for custodians to hear a speech on cleaning, the speaker singled out plaintiff in offensive ways and apologized to the audience for the presence of black people in the film shown by the speaker. Plaintiff left the speech but later was disciplined for doing so. During lunch, other custodians would place tampons where plaintiff sat in the break room and try to make plaintiff look at sexually-oriented magazines.

Plaintiff reported several incidents to various people including: Arlo Miles, plaintiff's direct supervisor, Hugh McClintock, another supervisor, and Mary Ann Ashworth, the assistant superintendent. In 1992, plaintiff informed Ashworth of the harassment. Ashworth told plaintiff that Ashworth would stop the name-calling but later called plaintiff and told her that Ashworth found no evidence of harassment. Plaintiff alleges that she was not allowed to talk to the school principal about the harassment. Plaintiff alleges that she phoned the superintendent to discuss the harassment but he told her he did not have time to talk to her.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Count I: National Origin Discrimination Under Title VII

Plaintiff alleges that defendant violated Title VII by discriminating against her based on her national origin. Plaintiff alleges a cause of action for disparate treatment discrimination and for a hostile work environment created by harassment based on national origin.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race ...." 42 U.S.C. § 2000e–2(a)(1).

### A. Statute of Limitations

 Defendant argues that plaintiff did not exhaust her administrative remedies within the applicable period of limitations for almost all of her discriminatory allegations.[1] Plaintiff argues that she is entitled to use the continuing violation doctrine to challenge all alleged discriminatory acts even though some may be outside the statute of limitations.[2]

 In *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir.1992), the Sixth Circuit stated that a plaintiff can use the continuing violation doctrine under two circumstances. The court stated, "The first category of continuing violations arise 'where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated groups.'" *Id.* at 678 (citing *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991)) (emphasis in original). Use of this category to establish a continuing violation requires at least one discriminatory act to have occurred within the statute of limitations period. *Id.* (citing *Dixon,* 928 F.2d at 216). The Sixth Circuit then stated, "The second category of continuing violations arise where there has occurred 'a longstanding and demonstrable policy of discrimination.'" *Id.* (citing *Dixon,* 928 F.2d at 217). Use of this category to establish a continuing violation requires a "continuing 'over-arching policy of discrimination.'" *Dixon,* 928 F.2d at 217 (citing *Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir.1987)).

Defendant argues that plaintiff cannot meet the standards for either category of a continuing violation because she cannot demonstrate: 1) that a discriminatory act fell within the relevant period, or 2) a

---

1. A plaintiff bringing a Title VII claim first must file a charge with the appropriate administrative agency within 300 days after the occurrence of discriminatory conduct. In *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 407 (6th Cir.1999) (citations omitted), the Sixth Circuit stated,

 Generally, the timely filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit.... Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred....

 However, if the alleged unlawful practice occurs in a "deferral state," in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act.

2. The continuing violation doctrine provides that "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank,* 958 F.2d 671, 677 (6th Cir.1992) (citations omitted).

longstanding policy of discrimination. I disagree. For the following reasons, I find that plaintiff could demonstrate a continuing violation under either category.

The first type of continuing violation occurs when there is evidence of present discriminatory activity and at least one discriminatory act occurred within the statute of limitations period. *Haithcock*, 958 F.2d at 678. The court explained this type of continuing violation in *Dixon:*

> The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, *each time* the employer dispenses the unequal pay.... This result follows from the fact that paying unequal wages for equal work is *in itself* the forbidden discriminatory act. It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period.... Of course, this category requires a "current" as well as "continuing" violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period.

928 F.2d at 216 (emphasis in original) (citations omitted). Because plaintiff filed her discrimination charge with the Ohio Civil Right Commission on June 7, 2000, the relevant statute of limitations period is August 12, 1999, through June 7, 2000.

In an affidavit attached to plaintiff's brief, John E. Robinson states that he worked with plaintiff from approximately October 1995 until October 1999. Robinson also states,

> I ... heard many times, *almost daily*, Manuela being made fun of because of her Mexican accent. Derogatory comments were made about her Mexican heritage.... For example, Arlo Miles, the supervisor over all the custodians at the High School, was present several times when Tony Milfi and Mick Frisbee called Manuela a fucking bitch and made fun of her Mexican accent. He did nothing. In fact, I heard Arlo laugh when Manuela was made fun of due to her Mexican accent.

(Doc. 23 Robinson Aff. at ¶ 5) (emphasis added). Robinson worked with plaintiff within the limitations period—August 12, 1999 through October 1999. If, according to Robinson, plaintiff was made fun of almost daily because of her Mexican accent, a jury could find that such behavior occurred from August 12, 1999, through October 1999. In which case, discrimination occurred within the relevant statute of limitations period.

Two other alleged discriminatory incidents occurred within the statute of limitations period. On April 25, 2000, plaintiff alleges defendant discriminated against her based on national origin because employees of defendant left vomit in a classroom for plaintiff to clean. Plaintiff alleges the custodians who worked during the day did not follow proper cleaning procedures when a student vomited in a classroom and left the vomit for plaintiff to clean when she arrived at work. (Pl.'s Dep. at 208–09). Plaintiff states she believed she was treated this way because of her national origin. In the summer of 2000, plaintiff alleges she was discriminated against on the basis of national origin because defendant assigned only one person to help her do work requiring lifting while another custodian had four to five people assist with lifting. (Pl.'s Dep. at 95–96).

Based on Robinson's statements that he heard discriminatory comments almost daily from October, 1995, through October, 1999, the incident when other custodians left vomit in a classroom for plaintiff to clean on April 25, 2000, and defendant's assignment of one person to assist plaintiff

in lifting while another custodian was assisted by four or five people during the summer of 2000, a jury could find at least one alleged discriminatory act occurred within the statute of limitations period from August 12, 1999, through June 7, 2000.

The first type of a continuing violation also requires evidence of present discriminatory activity. When asked about lost income as a result of discrimination based on national origin, plaintiff stated, "I am still losing overtime because they are giving the overtime to the new people. They used to hire some of them as subs. They give the overtime to them. They don't even ask me to work it." (Pl.'s Dep. at 287–88). I find plaintiff's statements alleging differential treatment in assigning overtime sufficiently demonstrate evidence of present, alleged discriminatory activity. I, thus, find that plaintiff could establish the first category of a continuing violation because at least one alleged discriminatory act occurred within the statute of limitations period and there is evidence of present, alleged discriminatory activity.

 The second type of continuing violation, to reiterate, occurs when there is a longstanding, over-arching policy of discrimination. *Haithcock,* 958 F.2d at 678; *Dixon,* 928 F.2d at 217. To demonstrate a longstanding policy, a plaintiff must show "something more than the existence of discriminatory treatment in [plaintiff's] case." *Haithcock,* 958 F.2d at 679; *see also Burzynski v. Cohen,* 2001 WL 950680, at *3–4, 264 F.3d 611, 617–18 (6th Cir.2001) ("Simply alleging discrete acts of non-selections is not sufficient to establish a continuing violation."); *Davis v. Ermco Mfg.,* 2000 WL 687688, at *3, 215 F.3d 1325 (6th Cir.2000) ("Davis complains of a series of discrete and separate acts that may constitute individual instances of disparate treatment but do not, even when considered

together, evidence a policy or practice of racial discrimination at the ERMCO plant."); *Ginett v. Federal Express Corp.,* 1998 WL 777998, at *8, 166 F.3d 1213 (6th Cir.1998) ("Federal Express's failure to promote and subsequent transfer of Ginett were not part of a continuing violation. The adverse employment decisions in this case are the types of discrete incidents which courts have declined to view as continuing violations.") (citations omitted).

Plaintiff alleges that other employees called her derogatory names in reference to her national origin and that she reported such incidents twenty to twenty-five times to her supervisor and his successor. Plaintiff alleges she also informed the assistant superintendent, who stated she could find no evidence supporting the name-calling.

Plaintiff also alleges that she was treated differently from non-Mexican employees through: 1) refusal of vacation days when other employees were permitted to take vacation days; 2) the requirement that she account for time off while others were not required to do so; 3) preference of cleaning areas given to new hires when the system was based on seniority; and 4) the provision of one assistant to help with heavy lifting while another custodian was given four to five assistants. Plaintiff alleges that when defendant held a mandatory in-service day the speaker singled her out in offensive ways and apologized to the audience for showing a film that contained several black people. Plaintiff states that she was disciplined for leaving the meeting.

John Robinson states that plaintiff was given more difficult jobs and larger areas to maintain. Robinson also states that when derogatory comments about plaintiff's heritage were made in front of a supervisor, the supervisor laughed.

In an affidavit attached to plaintiff's brief, Robert Lagunovich states that while he worked as a custodian for defendant for one year around 1995, custodians and managers referred to him as "wetback," "spic," and "sand nigger" more than fifty times. (Doc. 23 Lagunovich Aff. at ¶ 4). Robert Lagunovich states that Bob Good, the Director of Operations, referred to him as a "spic and wetback." (*Id.*). Robert Lagunovich also states, "[Good] also told me that he did not want me working at Findlay High School because he did not want two Mexicans working in the same building." (*Id.*). When Robert Lagunovich reported the discriminatory remarks to John Celebrezze, defendant's business manager, Celebrezze said Lagunovich was "blowing things out of proportion and that [Lagunovich] should do [his] job." (*Id.* at ¶ 6).

The allegations by plaintiff, Robinson, and Robert Lagunovich suffice to establish a longstanding, over-arching policy of discrimination. I, thus, find that plaintiff also could establish the second type of a continuing violation. Evidence of discrimination that occurred outside the statute of limitations period can be considered in analyzing plaintiff's remaining claims.

### B. Disparate Treatment

Plaintiff alleges defendant violated Title VII by discriminating against her on the basis of her national origin.

 A plaintiff can prove disparate treatment under Title VII by proving she suffered intentional discrimination. *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1081 (6th Cir.1980). A plaintiff can establish a disparate treatment claim for discrimination based on national origin through direct or indirect evidence. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir.2000) ("A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which

would support an inference of discrimination.") (citing *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997)). Plaintiff argues that she has both direct and indirect evidence of discrimination.

### 1. Direct Evidence of Disparate Treatment Discrimination

 Defendant argues that plaintiff has not produced any direct evidence that an individual with supervisory or decision-making authority made a decision or took an adverse employment action because of plaintiff's national origin. Defendant contends plaintiff's evidence that co-workers made derogatory remarks is not direct evidence under a disparate treatment theory because the co-workers did not have authority to take employment action regarding her duties or other conditions or terms of employment. I agree.

The Sixth Circuit has stated, "Direct evidence requires the conclusion that the employer's actions were motivated, at least in part, by unlawful discrimination." *Garnet v. General Motors Corp.*, 2001 WL 1136003, at *2, 19 Fed.Appx. 363, 365 (6th Cir.2001) (citing *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir.2000)); *see also Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) ("In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."); *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998) (In an Americans with Disabilities Act case, the court stated, "[Direct] evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.' ").

 Discriminatory statements constitute direct evidence that "discrimination played a role in an employment decision,

but 'only if they are both made by the decisionmaker and related to the employment decision at issue.'" *Syvongxay v. Henderson,* 147 F.Supp.2d 854, 857 (N.D.Ohio 2001) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring); *Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 688 (7th Cir. 1998)).

 Plaintiff argues that "the evidence that her supervisor, and her supervisor's supervisor, were well aware of and refused to take action against [the discriminatory remarks], coupled with their discriminatory work assignments, constitutes further direct evidence of employment discrimination under the disparate treatment theory." (Doc. 23 at 13). Supervisor awareness of and refusal to prevent and discipline other employees for discriminatory remarks and discriminatory work assignments do not, however, establish direct evidence of discrimination based on national origin. *See, e.g., Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir. 1998) (" 'Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden...' of demonstrating animus.") (citing *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. 1775 (O'Connor, J., concurring)). Plaintiff has not demonstrated that she can put forth evidence showing a decisionmaker made discriminatory remarks related to an employment decision at issue. Plaintiff cannot, therefore, establish a disparate treatment claim based on direct evidence.

## 2. Indirect Evidence of Disparate Treatment Discrimination

A plaintiff can prove disparate treatment discrimination through indirect evidence using a three-part test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must prove a prima facie case of discrimination by showing plaintiff: 1) is a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position; and 4) was treated differently from similarly situated employees outside the protected class. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 402–03 (6th Cir.1999) (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992) (citing *McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. 1817)).

The defendant, then, may offer a legitimate non-discriminatory reason for its decision. *Id.* at 403. The plaintiff, finally, may rebut the legitimate non-discriminatory reason by showing it was a pretext for discrimination. *Id.* The burden of proof, under this framework, always remains on the plaintiff. *Id.* (citing *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996)).

### a. Plaintiff's Prima Facie Case

 Defendant argues that plaintiff cannot establish the second and fourth elements of her prima facie case.[3] Defendant argues that: 1) plaintiff's allegations do not constitute materially adverse changes in the terms and conditions of her employment; and 2) "[p]laintiff cannot prove that, for the same or similar conduct, she was

---

**3.** Defendant specifically acknowledges that plaintiff is a member of a protected class under the first prong of the indirect evidence framework. While defendant states that plaintiff cannot prove the remaining three elements, defendant never addresses whether plaintiff was qualified for the position—the third element. Defendant only argues that plaintiff was not the most qualified for the position. For the purposes of this order, thus, I will treat the third prong of the indirect evidence framework as acknowledged by defendant.

treated differently than similarly-situated non-Mexican employees." (Doc. 20 at 8). Because I agree with defendant's first argument—that plaintiff cannot meet the second element of her prima facie case, I decline to address the fourth element of plaintiff's prima facie case.

Under the second prong of plaintiff's prima facie case, plaintiff must prove that she was subjected to a materially adverse employment action by defendant. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 410 (6th Cir.1999) ("[Plaintiff] must establish that [she] has suffered a 'materially adverse' change in the terms or conditions of employment because of the employer's actions.") (quoting *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir.1996)). The Sixth Circuit has stated, in a Title VII retaliation case,

> This circuit has adopted the Seventh Circuit's standard for assessing actions alleged to be a "materially adverse" employment action.... The Seventh Circuit "listed certain factors to consider in determining whether an employment action was materially adverse: 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'"

*Jeffries v. Wal–Mart Stores, Inc.*, 2001 WL 845486, at *7, 15 Fed.Appx. 252, 262 (6th Cir.2001) (citing *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 661–62 (6th Cir.1999)); (quoting *Kocsis*, 97 F.3d at 886) (quoting with approval *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). The court, in *Jeffries*, also stated that any change in employment conditions is required to be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* at 262 (quoting *Kocsis*, 97 F.3d at 886).

Defendant argues that plaintiff suffered no materially adverse employment action because:1) she remained a custodian with the same rights as other custodians; 2) plaintiff's allegations are trivial employment disputes; 3) the discipline resulting from plaintiff's refusal to return to the in-service day speech only involved a written reprimand and no loss of compensation; and 4) the withdrawal of permission to use a cabinet instead of a locker for her personal belongings was insignificant because all other custodians were required to use a locker.

Plaintiff, in response to defendant's arguments, only contends that she suffered a materially adverse employment action because she was given larger work assignments with less assistance than other employees. Larger work assignments do not constitute a materially adverse employment action under the rationale set forth above. Plaintiff has not established that she can prove she suffered anything more disruptive than an inconvenience or alteration of job responsibilities.

Plaintiff cannot, therefore, establish disparate treatment discrimination based on indirect evidence. Defendant's motion for summary judgment on plaintiff's claim of disparate treatment discrimination shall be, therefore, granted.

### C. Hostile Work Environment

Plaintiff contends that defendant violated Titled VII because she "has been subjected to a continuing pattern of harassment by defendant because of her national origin." (Compl. at ¶ 6). Plaintiff's complaint alleges that she suffered harassment by both co-workers and supervisors.

A plaintiff can prove a Title VII violation by proving she was subjected to a hostile work environment through harassment

based on membership in a protected class. A plaintiff can recover for harassment by both co-workers and supervisors.

■ To succeed on a hostile work environment claim based on co-worker harassment, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she was subject to unwelcomed ... harassment; (3) the harassment was based on her [national origin]; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) [defendant] 'knew or should have known of the charged ... harassment and failed to implement prompt and appropriate corrective action.'" *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997) (citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 50 (6th Cir.1996) (quoting *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 621 (6th Cir. 1986))); *Gwen v. Regional Transit Auth.*, 2001 WL 345793, at *3, 7 Fed.Appx. 496, 500 (6th Cir.2001).

■ A hostile work environment claim based on supervisor conduct requires a different analysis. The first step is to consider whether the supervisor took a tangible employment action against the employee. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 789 (6th Cir.2000). A tangible employment action can include events such as "discharge, demotion, or undesirable reassignment." *Id.* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). If no tangible employment action was taken, the next step is to determine whether the supervisor's harassment was severe or pervasive. *Id.* at 790–91; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

■ If the harassment was severe or pervasive, the defendant is entitled to raise an affirmative defense. In *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275, the Court stated:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

### 1. Co–Worker Harassment

Defendant concedes the first and second elements of a hostile work environment claim based on co-worker harassment. Defendant does not dispute that plaintiff is member of a protected class and that "periodically during her employee [sic] she has been subjected to unwelcome harassment from her co-workers." (Doc. 20 at 9). Defendant argues that plaintiff cannot establish the other three elements of a hostile work environment claim based on co-worker harassment: the harassment was based on national origin, the harassment unreasonably interfered with plaintiff's work performance and created a hostile work environment, and defendant knew or should have known of the harassment and failed to implement prompt and appropriate corrective action.

#### a. Harassment Based on National Origin

■ Plaintiff alleges that co-workers called her derogatory names in reference to her nationality and that she reported it twenty to twenty-five times to her supervisor and his successor. One employee, Ruth VanAtta, told plaintiff that she was treated differently because she is Mexican,

and VanAtta and other workers hated Mexicans. Plaintiff also states that a former supervisor said, "[W]hy don't she just learn English, she is in America." (Pl.'s Dep. at 262). Plaintiff also alleges other examples of harassment such as the stealing of equipment from her cart, the placement of vomit in a trash can for which plaintiff was responsible, the placement of tampons where plaintiff sat in the lunch room, the removal of paper towels from dispensers after plaintiff filled the dispensers, the attempt to force plaintiff to look at sexually-oriented magazines, one employee's threat to show plaintiff his penis and his subsequent opening of his pants' zipper, and the leaving of vomit in a classroom for plaintiff to clean.

Defendant argues that "[p]laintiff has failed to produce any evidence (beyond her personal, subjective belief) that any of the unwelcome harassment she experienced was based upon or motivated by her national origin." (Doc. 20 at 10). Defendant explains these incidents as "sophomoric behavior" and argues that they were not based on national origin. (Doc. 20 at 10). I disagree.

The derogatory remarks in reference to plaintiff's origin, to begin, certainly are based on national origin. The other examples of harassment, furthermore, can be considered harassment based on plaintiff's national origin.

In *Williams v. General Motors Corp.*, 187 F.3d 553, 564–65 (6th Cir.1999), the Sixth Circuit considered whether non-sexual conduct could constitute harassment based on sex. The plaintiff alleged a hostile work environment claim based on evidence of "[a] prank of gluing a box to a desk, misplacing a buggy, locking someone in the crib, blocking the crib entrance with materials," a statement that "I am sick and tired of these fucking women ....," and sexually-related remarks. *Id.* The court stated, "[H]arassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Id.* at 565. The court held that a plaintiff only must show that "but for the fact of her sex, she would not have been the object of harassment" to demonstrate that any harassment was based on sex. *Id.; see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) ("Non-sexual conduct may be illegally sex-based and properly considered in a hostile environment analysis where it can be shown that but for the employee's sex, he would not have been the object of harassment.") (citing *Williams*, 187 F.3d at 565).

The Sixth Circuit's holding in *Williams* can be analogized to the national origin discrimination claim in this case.[4] As in *Williams*, there is evidence of derogatory remarks based on membership in a protected class combined with pranks and other harassing behavior. Plaintiff only has to show that but for her national origin, she would not have been harassed. Considered together, plaintiff's examples of harassment could show that she suffered harassment because of her national origin.

**b. Unreasonable Interference with Plaintiff's Work Performance and Creation of a Hostile or Offensive Work Environment**

■ Defendant contends that none of the incidents unreasonably interfered with

---

4. In *Duplessis v. Training and Dev. Corp.*, 835 F.Supp. 671, 677 (D.Me.1993) (citing *Boutros v. Canton Reg'l Transit Auth.*, 997 F.2d 198, 202–03 (6th Cir.1993)), the court stated, "While there is an abundance of case law regarding racially or sexually hostile work environments, there is little national origin discrimination case law. However, the principles applicable to sexual and racial harassment apply to harassment on the basis of national origin."

plaintiff's work performance or created a hostile work environment that was sufficiently severe or pervasive. Defendant specifically argues that because the incidents occurred over a twenty year period and were not physically threatening or humiliating, plaintiff cannot show that the alleged harassment unreasonably interfered with her work performance or was severe or pervasive. I disagree.

This prong of a hostile work environment claim requires the court to look to the totality of the circumstances. *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275. I must consider several factors in gauging the severity or pervasiveness of the alleged harassment, including: " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Newman v. Federal Express Corp.*, 2001 WL 1134968, at *3, 266 F.3d 401, 405 (6th Cir.2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The work environment must be objectively and subjectively offensive to the plaintiff. *Id.* 2001 WL 1134968, at *3, 266 F.3d 401 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367).

Plaintiff's brief states,

[The harassment] occurred almost daily, was by its very nature humiliating, and when coupled with the adverse action taken, such as depriving her of help given to Anglo workers, was certainly severe. Furthermore, such conduct as hiding her cleaning equipment, piling other custodians' trash onto hers, and depriving her of help offered to other custodians, obviously interfered with Plaintiff's work performance.

(Doc. 23 at 14).[5]

Plaintiff has stated that she found the harassment subjectively humiliating and a jury could find that the harassment was objectively offensive. According to plaintiff, the co-worker harassment occurred frequently. The harassment also could be considered physically humiliating because co-workers forced plaintiff to clean up vomit while they were working and could have done so. By considering the totality of the circumstances, I find that plaintiff's allegations of harassment could have interfered unreasonably with plaintiff's work environment and created a hostile work environment that was severe or pervasive.

**c. Defendant Knew or Should Have Known of the Charged Harassment and Failed to Implement Prompt and Appropriate Corrective Action**

Defendant argues that plaintiff has not produced evidence demonstrating defendant's knowledge of the alleged harassment or that defendant unreasonably failed to take prompt and appropriate corrective action. Defendant argues that

---

**5.** Plaintiff argues that the racist remarks made to Robert Lagunovich add to the evidence establishing a hostile work environment. Plaintiff relies on *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir.1999). In *Jackson*, the court stated, "We have also credited evidence of racial harassment directed at someone other than the plaintiff when the plaintiff knew a derogatory term had been used.... '[T]he fact that a plaintiff learns second-hand of a racially derogatory comment ... by a fellow employee or supervisor can impact the work environment.' " *Id.* at 661 (citing *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1079 (6th Cir.1999)); (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 111–12 (2d Cir.1997)).

Plaintiff, however, never states that she knew about the derogatory remarks made to Robert Lagunovich. I cannot, therefore, consider those remarks in assessing the fourth element of plaintiff's hostile work environment claim.

the one complaint made to Assistant Superintendent Ashworth was investigated.

Plaintiff argues that she "made repeated complaints to her supervisor, and to her supervisor's supervisor about the harassment, and made a complaint to the assistant superintendent." (Doc. 23 at 15). Plaintiff further argues, "Plaintiff is only required to make reasonable effort, and is not required to make successive fruitless complaints after the first several dozen attempts failed." (Doc. 23 at 16).

Plaintiff has presented evidence of defendant's knowledge of the harassment because plaintiff has stated that she informed her supervisor and her supervisor's supervisor several times of the harassment. A jury could find, furthermore, that defendant unreasonably failed to take prompt and appropriate action because the harassment was investigated only one time. A genuine issue of fact remains, therefore, regarding whether defendant unreasonably failed to take prompt and appropriate action.

Defendant's motion for summary judgment on plaintiff's hostile work environment claim based on co-worker harassment shall be, therefore, denied.

### 2. Supervisor Harassment

Defendant argues that: 1) no supervisor took a tangible employment action against plaintiff; 2) any alleged harassment was not severe or pervasive; and 3) defendant can establish its affirmative defense.

Plaintiff's brief does not dispute defendant's argument that no tangible employment action was taken. Plaintiff must, thus, establish that the supervisor harassment was severe or pervasive.

### a. Severe or Pervasive Harassment by a Supervisor

■ Plaintiff alleges examples of harassment including: 1) a reprimand for refusing to return to a meeting where she had been singled out offensively; 2) providing assistance to another custodian for lifting when plaintiff had less assistance; 3) refusing to grant vacation days under circumstances when other employees could use their vacation days; 4) giving preference to new hires in choice of cleaning areas when the system was based on seniority; 5) refusing permission to direct other custodians' work when custodians with less seniority could do so; and 6) allowing less time for plaintiff to clean areas. Defendant argues that plaintiff cannot establish that any alleged supervisor harassment was severe or pervasive.

■ I must consider the same factors used in analysis of co-worker harassment to determine the severity or pervasiveness of supervisor harassment. *See Newman*, 2001 WL 1134968, at *3, 266 F.3d at 405 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367) (The factors include: " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "). The work environment, again, must be objectively and subjectively offensive to the plaintiff. *Id.* 2001 WL 1134968, at *3, 266 F.3d at 405 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367); *see also Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 ("A recurring point in these opinions is that 'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' ") (citations omitted).

Plaintiff's complaint states that the above-stated types of harassment occurred almost on a daily basis. The examples listed above are more than mere offensive utterances and isolated incidents. I find that a genuine issue of material fact re-

mains as to whether the alleged supervisor harassment was severe or pervasive.

### b. Defendant's Affirmative Defense

To reiterate, a defendant can assert an affirmative defense to liability for supervisor harassment if no tangible employment action was taken by proving: 1) the defendant exercised reasonable care to prevent and correct promptly the unlawful harassing behavior; and 2) the employee unreasonably failed to use any preventive or corrective measures provided by the defendant to avoid harassment. *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. Defendant must meet both prongs of to establish its affirmative defense.

Defendant argues that: 1) it has an anti-harassment policy which is available to employees; 2) defendant acted to correct any alleged harassment during the one time plaintiff complained to the assistant superintendent; and 3) plaintiff unreasonably failed to take advantage of defendant's complaint procedure.

In *Ellerth*, 524 U.S. at 764, 118 S.Ct. 2257, the Court stated,

> While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.

An anti-harassment policy can, thus, be an integral component of the first prong of a defendant's affirmative defense. The existence of an anti-harassment policy, however, does not necessarily prove the first prong of the defense. In *Brown v. Perry*, 184 F.3d 388, 396 (4th Cir.1999) (citations omitted), the court stated, "[M]ere promulgation of such a policy may well fail to satisfy the employer's burden. The em-

ployer must act reasonably, and thus any policy adopted by the employer must be both reasonably designed and reasonably effectual." The employer must not administer the anti-harassment policy in bad faith. *Id.*

The fact that defendant has an anti-harassment policy does not establish the first prong of its defense, especially in light of plaintiff's statements that she reported the harassment to her supervisor and her supervisor's supervisor and the harassment was not corrected. The fact that the assistant superintendent investigated plaintiff's complaint when plaintiff complained to her shows that defendant attempted to prevent or correct harassment one time. This evidence is, however, outweighed by plaintiff's evidence that she complained several times to another superior and the harassment continued. Plaintiff's evidence calls into question the effectiveness of defendant's anti-harassment policy and whether the policy was administered in bad faith.

There is a genuine issue of material fact in whether defendant exercised reasonable care to prevent and correct promptly any alleged harassing behavior. Because there is a genuine issue of material fact on the first prong of defendant's affirmative defense and defendant must meet both prongs to prevail, I decline to address defendant's third argument, which addresses the second prong.

Based on the foregoing, I find that a genuine issue of material fact remains on whether supervisor harassment based on national origin created a hostile work environment for plaintiff. Defendant's motion for summary judgment on plaintiff's hostile work environment claim shall be, therefore, denied.

### II. Count II: 42 U.S.C. § 1983

Plaintiff alleges that defendant has violated 42 U.S.C. § 1983 by discriminating

against her based on her national origin. Defendant argues that plaintiff cannot prove the necessary elements to succeed on a § 1983 claim.

A § 1983 claim requires the plaintiff to identify a right guaranteed by the United States Constitution or the laws of the United States and the deprivation of that right by a person acting under the color of state law. *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) (quoting *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.1992)). A political subdivision cannot be held liable under a respondeat superior theory. *Burnell v. Williams,* 997 F.Supp. 886, 892 (N.D.Ohio 1998) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The plaintiff must show a strong custom that allowed the harassment to continue and a direct causal link between the custom and the alleged constitutional deprivation. *Id.* 892–93. A plaintiff must " 'show that the particular injury was incurred because of the execution of that policy.' " *Id.* at 893 (quoting *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 508 (6th Cir.1996)).

### A. Constitutional Violation or Deprivation

Defendant contends that plaintiff's claim mirrors her Title VII claim and the record does not support a finding of intentional discrimination. I disagree.

In *Boutros v. Canton Reg'l Transit Auth.,* 997 F.2d 198, 203 (6th Cir.1993), the court enumerated the five elements necessary to state a claim for sexual harassment.[6] The court then stated,

> To the extent, therefore, that *Rabidue* and *Risinger* state the elements necessary to state a claim of racially or sexually hostile work environments under § 1983 as companion claims to those made ⌐nder Title VII, a national origin harassment claim satisfying those same elements is equally actionable under both 42 U.S.C. § 1983 and Title VII.

*Id.* at 203. The court thus stated that the elements necessary to prove a Title VII national origin harassment claim establish a § 1983 claim based on national origin discrimination. Because I have found that a genuine issue of material fact remains on plaintiff's Title VII claim for national origin harassment creating a hostile work environment, I must find that a genuine issue of material fact remains on whether a constitutional violation occurred under § 1983.

### B. Custom and Direct Causal Link

Both parties agree that once a constitutional violation has been established, plaintiff must demonstrate that defendant tolerated a pervasive custom which directly caused the deprivation at issue. Plaintiff must, thus, establish:

**6.** The court listed the elements as:
(1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of . . . verbal . . . conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment that affected seriously the psychological well-be-

ing of the plaintiff; and (5) the existence of respondeat superior liability.
*Boutros,* 997 F.2d at 203 (citing *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 484 (6th Cir.1989); *Rabidue v. Osceola Ref. Co.,* 805 F.2d 611, 619–20 (6th Cir.1986); *Highlander v. K.F.C. Nat'l Mgmt. Co.,* 805 F.2d 644, 649 (6th Cir.1986)) (alterations in original). *See supra* Part I.C. for application of these elements to the national origin harassment claim.

(1) the existence of a clear and persistent pattern of [harassment] by [defendant's] employees; (2) notice or constructive notice of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that a court can say that their deliberate indifference amounted to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Burnell,* 997 F.Supp. at 893 (citing *Claiborne,* 103 F.3d at 508 (citations omitted)); *Claiborne,* 103 F.3d at 508 ("The evidence must show that the need to act is so obvious that the School Board's 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to Doe's constitutional rights.") (citing *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Defendant argues that plaintiff cannot present evidence that: 1) a clear and persistent pattern of discrimination by its employees exists; and 2) defendant only had notice when plaintiff reported a complaint to the assistant superintendent and the assistant superintendent immediately investigated the complaint. I disagree.

Plaintiff has presented evidence of frequent harassment occurring over a long period of time. Plaintiff also stated that she made numerous reports to her supervisor and her supervisor's supervisor. Plaintiff argues that defendant's actions constitute deliberate indifference because the supervisors refused to take action and joined in the discriminatory conduct. The evidence that plaintiff has presented supports a finding that defendant's deliberate indifference amounts to an official policy of inaction and that defendant's custom was the moving force or direct causal link to the constitutional deprivation.

Defendant's motion for summary judgment on plaintiff's § 1983 claim shall be, therefore, denied.

### III. Count III: National Origin Discrimination Under Revised Code § 4112.99

Plaintiff alleges that defendant has violated her rights under R.C. § 4112.99 by discriminating against her based on her national origin.

Defendant argues that analysis of plaintiff's Title VII claim should apply to plaintiff's state-based claim for discrimination because Ohio courts typically apply Title VII case law in interpreting R.C. § 4112.02. Plaintiff contends that "[t]he Ohio Supreme Court has repeatedly stated that except where R.C. Chapter 4112 defines the statutory terms differently, federal case law interpreting and applying Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., is generally applicable to R.C. 4112.02 claims." (Doc. 23 at 10).

Because neither party gives this court reason to apply a different standard to plaintiff's state-based claim, the analysis set forth in the discussion of plaintiff's Title VII claim will apply to plaintiff's state-based claim. Plaintiff's claim of hostile work environment discrimination under Ohio law shall survive defendant's motion for summary judgment. Defendant's motion for summary judgment on plaintiff's state-based disparate treatment claim shall be granted.

### IV. Count IV: Intentional/Reckless Infliction of Emotional Distress

Plaintiff alleges that she suffered serious emotional distress as a result of defendant's intentional or reckless conduct. Plaintiff alleges that defendant's conduct exceeded all bounds of decency, is utterly intolerable in a civilized society, and was extreme and outrageous.

Defendant argues that an intentional tort is not a viable claim against a political subdivision. Plaintiff' brief concedes that her intentional infliction of emotional distress claim must be dismissed because of immunity.

Defendant's motion for summary judgment on plaintiff's intentional infliction of emotional distress claim shall be, therefore, granted.

## V. Identification of Defendant

 Defendant argues that plaintiff has not named the proper defendant in this case and the complaint must be dismissed in its entirety. Plaintiff filed this suit against the Findlay City School System, and the entity that governs and manages the Findlay schools is known as the Findlay City School District Board of Education.

Because defendant had notice of this suit from the filing of the complaint and has not alleged bad faith on the part of plaintiff, I shall grant leave to plaintiff to amend the complaint to name the correct defendant.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

1. Defendant's motion for summary judgment on counts I, II, and III insofar as they state a claim for discrimination based on disparate treatment be, and hereby is, granted;

2. Defendant's motion for summary judgment on counts I, II, and III insofar as they state a claim for discrimination based on a hostile work environment be, and hereby is, denied;

3. Defendant's motion for summary judgment on count IV be, and hereby is, granted; and

4. Plaintiff is granted leave to amend her complaint to name the correct defendant.

**So ordered.**